# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2391

_____

In re: Papio Keno Club, Inc.,       *

            Debtor.       *

-------------------------------------------  *

Papio Keno Club, Inc.,       *    Appeal from the United States

            Appellee,       *    Bankruptcy Appellate Panel
for the Eighth Circuit.

      v.       *

City of Papillion,       *

            Appellant.       *

_____

Submitted: February 12, 2001
Filed: August 17, 2001

_____

Before RICHARD S. ARNOLD and HANSEN, Circuit Judges, and KORNMANN,[1] District Judge.

_____

HANSEN, Circuit Judge.

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

Papio Keno Club, Inc. (Papio Keno) filed a Chapter 7 bankruptcy petition and then initiated this adversary proceeding against the City of Papillion, Nebraska (City). Papio Keno alleged that the City wrongfully terminated a contract in which Papio Keno had agreed to operate the City's keno-type lottery. Following a hearing on Papio Keno's complaint, the bankruptcy court[2] found that the City was entitled to terminate the contract based on Papio Keno's noncompliance with its terms, but that the City had withheld funds it was not entitled to retain following the termination of the agreement. The United States Bankruptcy Appellate Panel for the Eighth Circuit (BAP) affirmed, and the City appeals. We affirm.

I.

Papio Keno and the City entered into a Lottery Operator Agreement (lottery agreement) in September 1992. Papio Keno agreed to operate a keno-type lottery on behalf of the City for a period of five years in exchange for a designated percentage of the lottery's proceeds. Under the Nebraska County and City Lottery Act, Neb. Rev. Stat. § 9-601 through 9-653, a city may conduct a lottery and use proceeds from its operation for community betterment purposes. See Neb. Rev. Stat. § 9-602.

The lottery agreement established two forms of financial assurances securing Papio Keno's performance. Paragraph 12 obligated Papio Keno to provide the City with a $250,000 performance bond or letter of credit in that amount. Paragraph 14.2 required Papio Keno to deposit a cash reserve with the City equal to two times the maximum lottery prize available in any regular lottery game plus the maximum possible prize available in any "progressive" keno game if one was offered in the future. Papio Keno complied with paragraph 12 by securing a $250,000 irrevocable letter of credit

_____

[2]The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

2

from a local bank, issued in favor of the City, but it never deposited the cash reserve as required by paragraph 14.2.

The parties amended the lottery agreement in 1993 in contemplation of offering a "progressive" keno game in addition to the regular keno game. The amendment authorized Papio Keno to withhold one percent of the gross proceeds from the regular game, to be taken from the City's share of the lottery proceeds, to establish a $200,000 jackpot for the new progressive game. Once the $200,000 jackpot had been established, Papio Keno was to resume paying the one percent to the City. Although the amendment was not effective until August, Papio Keno deposited a total of $25,458 into a separate account during the three months prior to the amendment's effective date. Papio Keno continued to make deposits into that account until January 1995 when it withdrew the balance, $169,329.71, and purchased a certificate of deposit. Financial statements prepared by Papio Keno reflect that the money was earmarked for the progressive game jackpot.

In August 1997, the City insisted that Papio Keno transfer the certificate of deposit into the City's name. After Papio Keno complied, the City determined that Papio Keno was not in compliance with paragraph 14.2 of the lottery agreement because the value of the certificate of deposit was less than the $250,000 cash reserve (twice the regular prize of $25,000 plus the $200,000 progressive jackpot) that Papio Keno was required to deposit with the City. The City then made a demand on the letter of credit of $80,670.29 ($250,000 less the value of the certificate of deposit) to cover the shortfall, which demand the issuing bank honored.

When Papio Keno failed to honor the issuing bank's request for repayment of the $80,670.29, the bank gave notice to the City that the letter of credit would expire on October 20, 1997, and that it did not intend to renew the letter of credit. The City subsequently determined that Papio Keno had committed several material breaches of the lottery agreement and, pursuant to the lottery agreement's liquidated damages

clause, claimed in excess of $4.3 million in damages. Citing numerous instances of Papio Keno's noncompliance with the lottery agreement's terms, the City demanded and was paid the remaining balance of the letter of credit, $128,820.71, by the issuing bank. The City then terminated the lottery agreement in September 1997. Papio Keno filed for bankruptcy protection shortly thereafter.

In the adversary proceeding, Papio Keno claimed that the City had wrongfully terminated the contract and it sought damages for the funds the City had drawn on the letter of credit and for the value of the certificate of deposit held by the City. The bankruptcy court ruled that the City was entitled to terminate the contract, that it had the right to request and hold the certificate of deposit, and that it was authorized to draw $80,670.29 on the letter of credit to increase the cash reserve to $250,000 in order to ensure Papio Keno's compliance with paragraph 14.2. The court rejected the City's claim that it was entitled to retain the entire cash reserve following the termination of the contract. The court concluded that paragraph 14.2 obligated the City to return the $250,000 cash reserve to Papio Keno unless it had a legitimate claim to the funds.[3] Out of the certificate of deposit, the bankruptcy court found that the City had a claim to $107,012, plus $29,831 in interest, representing the one percent share of the City's proceeds that were deposited by Papio Keno <u>after</u> the August 1993 amendment. It awarded the remaining value of the certificate of deposit, $25,488 plus $6,998 in interest, to Papio Keno, which, according to the court, belonged to Papio Keno because it was deposited prior to the effective date of the amendment and was not generated from the City's share of the lottery proceeds.[4] Finally, the court ordered

---

[3]Paragraph 14.2(g) provides: "The cash reserve for security shall be returned to [Papio Keno] after all prizes and claims have been paid and settled at the termination of the Lottery Operator's Agreement." (Appellant's App. at 76.)

[4]The interest figures presented reflect the damage award intended by the bankruptcy court. The BAP corrected a minor mathematical error in the bankruptcy court's interest computation.

4

the City to return the $80,670.29 drawn on the letter of credit to cover the cash reserve shortfall.

After accounting for additional damages incurred by the City as a result of Papio Keno's noncompliance, the bankruptcy court determined that the City retained $71,341 drawn from the letter of credit which could be attributed to nothing other than liquidated damages. The City claimed that it was entitled to keep the amount under the lottery agreement's liquidated damages clause, but the bankruptcy court ruled the clause unenforceable under Nebraska law. After correcting a minor mathematical error in the bankruptcy court's damage computations, see supra note 4, at 4, the BAP affirmed the damages awarded to Papio Keno.

## II.

Our standard of review is the same as that of the BAP. We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Popkin & Stern, 223 F.3d 764, 765 (8th Cir. 2000). While our review is a searching and independent one, we also realize that we are the second court charged with reviewing the bankruptcy court's factual findings for clear error. Being the second court to review the record, we are reminded of another jurist's poignant and colorful description of the clear error standard: "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988). Again, while we are always mindful of our duty to independently review the record, we think this description is a particularly accurate reflection of when we will reverse a bankruptcy court's factual finding that has been upheld by the BAP–we do not treat the BAP as a mere way station on the road to this court.

5

As its initial point on appeal, the City argues the bankruptcy court erred in awarding damages to Papio Keno because it did so under theories of recovery that were not pleaded in the complaint or identified in the pretrial order. The theories upon which the bankruptcy court permitted recovery were that upon termination of the lottery agreement 1) the City retained proceeds drawn on the letter of credit to cover liquidated damages that were prohibited by Nebraska law, and 2) the City breached paragraph 14.2 by failing to return the portion of the $250,000 cash reserve to which it had no claim.[5]

As the City notes, a party may be barred from advancing theories that are not identified in the pretrial order. See Glismann v. AT & T Tech., Inc., 827 F.2d 262, 267 (8th Cir. 1987); see also Fed. R. Civ. P. 16 (specifying that the pretrial order controls the subsequent course of the action). In general, the pretrial order should be construed liberally to cover any theory of recovery that might be embraced within the order's language. Trujillo v. Uniroyal Corp., 608 F.2d 815, 818 (10th Cir. 1979). Construing the pretrial order liberally, we conclude that the liquidated damage issue was properly preserved for the bankruptcy court's consideration. Papio Keno claimed from the outset of the litigation that the City retained liquidated damages that had no reasonable connection to any actual damage the City may have suffered. (Complaint, Appellant's App. at 6-7.) While not phrased with the same precision, the pretrial order identified as issues for trial whether the City demanded funds under the letter of credit to cover liquidated damages and whether the City was entitled to liquidated damages under the contract. (Appellant's App. at 24.) This language was sufficient to give the City notice that the enforceability of the liquidated damages clause remained an issue for trial.

In contrast, whether the pretrial order encompassed the issue of the City's alleged breach of paragraph 14.2 is arguable. We find it unnecessary to resolve that particular

[5]The parties agree that Nebraska law covers the contractual issues involved in this appeal.

question because even if the issue was not identified in the pretrial order, it was tried with the City's consent. See Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., 54 F.3d 478, 481 (8th Cir. 1995) (recognizing that issues unraised in the pleadings are tried by implied consent where a party fails to object at trial to their introduction or to the presentation of evidence relevant to the issues). Papio Keno's counsel argued in his opening statement that paragraph 14.2 obligated the City to return the cash reserve upon termination of the contract. (Tr. at 5-6.) The City's counsel responded in his own opening statement that the City had no obligation to return the reserve under paragraph 14.2 because it was the City's property under the lottery agreement and the 1993 amendment. (Tr. at 12-13.) Both sides again raised the issue during their closing arguments, and the bankruptcy court specifically questioned the City's counsel on the issue. (Tr. at 161-66.) The City never objected to the issue's introduction, and the bankruptcy court committed no error in reaching an issue that the parties so forcefully placed before it.

The City next argues that the bankruptcy court erroneously found that the $25,488 deposited by Papio Keno prior to the 1993 amendment constituted Papio Keno's property. The City relies on testimony by Papio Keno's president from which one could possibly infer that the preamendment deposits were generated from the City's share of lottery proceeds. Upon review of the very limited testimony upon which the City relies, we are not "left with the definite and firm conviction that a mistake has been committed" by the bankruptcy court. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

The City also argues that it could not have breached paragraph 14.2, as found by the bankruptcy court, by retaining the $80,670.29 drawn on the letter of credit to cover the cash reserve shortfall. Paragraph 14.2(a) of the lottery agreement required Papio Keno to "deposit" a "cash reserve" with the City to insure Papio Keno's compliance with its financial obligation to pay the prizes the gamblers might win.

According to the City, proceeds from a letter of credit are not property of a debtor's estate, see, e.g., In re Leisure Dynamics, Inc., 33 B.R. 171, 172-73 (Bankr. D. Minn. 1983), and thus the $80,670.29 was not Papio Keno's to "deposit." The City therefore argues that the funds do not fall within paragraph 14.2's language and did not have to be returned at the contract's termination.

We find no merit to the City's argument. The bankruptcy court found that the City demanded the $80,670.29 to satisfy Papio Keno's obligation under paragraph 14.2, and that the proceeds constituted cash reserve under the contract's terms. We conclude that the finding was not clearly erroneous. Paragraph 14.2 does not specify a particular source from which Papio Keno had to fund the cash reserve, and the evidence presented suggested that the City demanded the funds to ensure Papio Keno's compliance with paragraph 14.2.

In a similar argument, the City suggests that it was not required to return the $200,000 held for the progressive jackpot because the $200,000 did not represent "cash reserve" under paragraph 14.2. It contends Papio Keno's obligation to fund the progressive jackpot under the 1993 amendment was separate from its obligation to deposit a cash reserve under paragraph 14.2, and thus paragraph 14.2's language requiring return of the deposit was inapplicable. The bankruptcy court did not treat the two provisions as creating independent obligations, finding instead that the 1993 amendment implicitly altered the terms of paragraph 14.2 by permitting Papio Keno to fund the cash reserve, at least a portion sufficient to cover the progressive game jackpot, with the City's one percent share of lottery proceeds. It further interpreted the contract as obligating the City to return any portion of the jackpot that was not generated from its proceeds. The BAP affirmed the bankruptcy court's treatment of the progressive jackpot, reasoning that the contract was ambiguous on whether the progressive jackpot constituted "cash reserve" under paragraph 14.2, and concluded the bankruptcy court's interpretation was not clearly erroneous.

The determination of whether a contract is ambiguous is a question of law that we review de novo. Nebraska Public Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1040 (8th Cir. 2000). If a contract is ambiguous, the meaning to be given it is a question of fact that we review for clear error. Plambeck v. Union Pac. R.R. Co., 509 N.W.2d 17, 20 (Neb. 1993); Mohamed v. UNUM Life Ins. Co., 129 F.3d 478, 480 (8th Cir. 1997). The contract does not contemplate the situation in which the parties found themselves, and we agree with the BAP's assessment that it is impossible to determine from the contract's language alone how to distribute the jackpot under the circumstances presented.[6] We also agree that the bankruptcy court's determination of the parties' intent was not clearly erroneous. The City has not identified any evidence suggesting that the parties treated Papio Keno's obligation to fund the progressive jackpot as separate from paragraph 14.2's cash reserve requirement.

The City's final argument relates to the bankruptcy court's treatment of the liquidated damages claimed by the City. It does not challenge the unenforceability of the liquidated damages clause but contends instead that ordering it to pay Papio Keno $71,341, the amount drawn on the letter of credit which represented liquidated damages, was an improper remedy. Relying on the doctrine of independence–the principle that the issuing bank's obligation under a letter of credit is separate and distinct from the underlying obligation for which the credit was issued, see Nassar v. Florida Fleet Sales, Inc., 79 F. Supp. 2d 284, 292 (S.D.N.Y. 1999),– the City suggests that the issuing bank (which is not a party here) is entitled to the funds, not Papio Keno.

---

[6]Citing a statement by the bankruptcy court that paragraph 14.2's language was "clear," the City argues the bankruptcy court found no ambiguity in the contract and asks, if we conclude otherwise, that we remand the case so that the bankruptcy court may consider evidence of the parties' intent. Despite the statement the City relies upon, it is apparent from the bankruptcy court's decision that it found the contract ambiguous on the question of how to divide up the unclaimed progressive jackpot. Furthermore, the City had its opportunity to present evidence on the contract's meaning.

The independence principle "protects only the <u>distribution</u> of the proceeds of the letter of credit . . . and does not address claims respecting the underlying contract." <u>In re: Graham Square, Inc.</u>, 126 F.3d 823, 827-28 (6th Cir. 1997). Here, Papio Keno claimed the City had no right to retain liquidated damages under the lottery agreement, an action on the underlying contract, which has nothing to do with the doctrine of independence. <u>See</u> <u>id.</u> at 828 (rejecting argument that independence principle barred an action on the underlying contract). The bankruptcy court found that the City increased Papio Keno's debt to the issuing bank by demanding payment under the letter of credit for liquidated damages to which it was not entitled. In such circumstances, an award of damages to compensate Papio Keno for the additional liability it incurred because of the City's conduct is certainly permitted. Although we agree in general with the City's contention that an unenforceable liquidated damages clause limits an aggrieved party's remedy to actual damages, where that same aggrieved party withheld funds exceeding its actual damages, the excess must be returned.

III.

For the reasons stated herein, we affirm the judgment of the Bankruptcy Appellate Panel.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.