# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2960

_____

| | | |
|---|---|---|
| United States of America | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| $84,615 in U.S. Currency, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Jonah Bronstein, | * | |
| | * | |
| Claimant - Appellant. | * | |

_____

Submitted: June 16, 2004
Filed: August 5, 2004

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

In this civil forfeiture case, Jonah Bronstein appeals: (1) the district court's[1] denial of his request to argue that his civil forfeiture violated the Eighth Amendment because it was excessive in proportion to his illegal drug conduct; (2) the district

_____

[1] The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

court's grant of the government's request to amend the pre-trial order; (3) the district court's finding that the government demonstrated by a preponderance of the evidence support of the forfeiture of his currency pursuant to 21 U.S.C. § 881(a)(6). We affirm the judgment of the district court.

## I.

On January 28, 2002, Officer Stephen W. Worley of the Omaha Police Department made a routine traffic stop of a vehicle (owned by Bronstein) in which Bronstein was a passenger. Upon approaching the vehicle, Officer Worley noticed the strong odor of marijuana. When asked about the odor, Bronstein admitted to smoking marijuana in the vehicle and handed Officer Worley a bottle that contained a small amount of marijuana. Bronstein represented that there was no more marijuana present in the car.

Officer Worley began a consensual search of the vehicle. Officer Worley asked Bronstein how to open the trunk. Bronstein replied that opening the trunk required a "special key," that was with a friend in California. Later, nonetheless, Bronstein opened the trunk, and asked Officer Worley what was considered a "user amount" of marijuana in Nebraska. Officer Worley replied that it was less than a pound, and Bronstein then identified a backpack in the trunk that contained another small amount of marijuana.

During Officer Worley's search of the trunk, Bronstein interrupted the search and informed Officer Worley that the trunk contained Bronstein's life savings (of about $80,000 wrapped in plastic), which was earned in his gem and mineral business. Police eventually uncovered seven air-tight bundles that contained $64,115 in a sealed, padded UPS Next Day Air package. Another three bundles, containing $20,500, were also found in the trunk and concealed in a green bag. Officer Worley cited Bronstein for possession of marijuana weighing less than one ounce.

On July 11, 2002, the United States filed a civil forfeiture action, alleging that the money found in the vehicle was either proceeds traceable to the exchange of a controlled substance or intended to be used to facilitate the possession and distribution of a controlled substance pursuant to 21 U.S.C. § 881(a)(6). Bronstein filed a claim asserting that the money belonged to him and was derived from the closing of his gem and mineral business.

After a bench trial, the district court concluded that the government had met its burden of proving by a preponderance of the evidence that the money was connected to illegal drug transactions. In reaching this conclusion, the district court relied on its findings that Bronstein possessed illegal drugs, that he admitted that he was a drug user, and that he possessed a large amount of money that had been carefully concealed. The district court discounted Bronstein's explanations for possession of the large sum of cash. Bronstein appeals.

## II.

As noted above, Bronstein claims three points of error. We address each of these arguments in turn.

### A. *Denial of Bronstein's Pre-trial Order Amendment Motion*

Bronstein contends that the district court erred by not allowing Bronstein to submit evidence that the civil forfeiture violated the excessive fines provision of the Eighth Amendment. Specifically, Bronstein contends that he was not allowed to argue the disproportionate nature of this civil forfeiture. The admissibility or exclusion of evidence lies within the sound discretion of the district court. *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1334 (8th Cir. 1985). We review the district court's evidentiary rulings under an abuse of discretion. *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1270 (8th Cir. 1997) (citing *Schultz v. McDonnell Douglas Corp.*, 105 F.3d 1258, 1259 (8th Cir. 1997). The district court found that Bronstein's failure to raise the issue of the disproportionate nature of the forfeiture under the Eighth

Amendment prior to the hearing constituted a waiver of the argument, and the court did not reach the merits of his argument. We find no error.

"The [P]retrial [O]rder measures the dimensions of a lawsuit." *Hale*, 756 F.2d at 1335. "In general, the [P]retrial [O]rder should be construed liberally to cover any theory of recovery that might be embraced within the order's language." *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001). In this case, the district court found that the issue had been waived because the Pretrial Order set forth three issues to be determined at trial: (1) whether Bronstein had standing to challenge the forfeiture; (2) whether Bronstein's currency was traceable to fruits of criminal activity; (3) whether Bronstein could demonstrate that he was an innocent owner of the property. None of these specified issues implicate the Eighth Amendment.

"Orders entered following Rule 16 conferences are not lightly disturbed." *Alberty-Velez v. Corporacion De Puerto Rico Para La Difusion Publica*, 242 F.3d 418, 423 (1st Cir. 2001). "The Pretrial Order supersedes all previous pleadings and controls the subsequent course of action unless modified by a subsequent order." *Anderson*, 128 F.3d at 1271 (citing Fed. R. Civ. P. 16(e)). A Pretrial Order "shall be modified only to prevent manifest injustice." Fed. R. Civ. P. 16(e). In *Hale*, we concluded that "[a] [P]retrial [O]rder will be modified only if there is no substantial injury or prejudice to the opponent." *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001) (quoting *Hale*, 756 F.2d at 1335) (finding that the district court committed reversible error in admitting evidence excluded by the Pretrial Order without making explicit findings that the other party would not be substantially prejudiced by the modification)).

The district court did not abuse its discretion in excluding evidence which was offered to support a theory not advanced in the Pretrial Order. "[A] party may be barred from advancing theories that are not identified in the [P]retrial [O]rder." *Papio Keno Club*, 262 F.3d at 729. Bronstein did not seek a slight modification of the

order's language; he instead attempted to offer an entirely new theory to invalidate the forfeiture. We therefore conclude that the district court did not err in relying on the Pretrial Order to define the parameters of the trial and excluding Bronstein's argument that the forfeiture would violate the excessive fines provision of the Eighth Amendment.

B. *Granting Government's Motion to Amend the Pretrial Order*

Bronstein also claims that the district court erred by permitting the Pretrial Order to be amended after the close of the trial to conform to the evidence that was presented at trial. "We review a district court's decision to grant or refuse amendments to conform the pleadings to the evidence for an abuse of discretion." *Clark v. Martinez*, 295 F.3d 809, 814–815 (8th Cir. 2002).

At the conclusion of the trial, the government moved to amend the Pretrial Order to encompass "controlled substance," not just "marijuana." The district court granted the government's motion. Bronstein argues that the government's amendment changed the nature of the offense to which the drugs were allegedly connected despite the fact the officers during the stop and even Bronstein himself in his trial brief, may have used the words "controlled substance." Bronstein contends that the present case was tried based on the relationship of the currency to the marijuana found in the vehicle and that the additional "controlled substance" language was prejudicial.

A party's consent to trying a claim may be implied, and the pleadings presumed amended, "if evidence to support the claim was introduced at trial without objection." *Shen v. Leo A. Daly Co.*, 222 F.3d 472, 479 (8th Cir. 2000); *see*, Fed. R. Civ. P. 15(b) (provides that issues actually tried without objection are effectively incorporated into the pleadings). Similarly, when an issue is tried by consent, it becomes of little moment whether it was encompassed in the Pretrial Order. *Papio Keno Club*, 262 F.3d at 729.

In this case, the Pretrial Order indicated that the controverted and unresolved issue was "whether the Defendant property is proceeds traceable to the transportation, sale, receipt, possession and distribution of marijuana." The government moved after trial to amend the Pretrial Order to change the language of the Pretrial Order by replacing the word "marijuana" with the phrase "controlled substances." The district court granted the motion stating, "[t]he [P]re-trial [O]rder was unnecessarily particular." The court found Bronstein to have been "well-aware" from the government's complaint that it sought to connect the money to controlled substances generally and not just marijuana found in Bronstein's possession.

Here, the government's evidence presented at trial raises the issue of "controlled substances" by clear implication. The government's Exhibit 1–a videotaped recording of the traffic stop–displays Officer Worley conversing with Bronstein. On the videotape, Officer Worley told Bronstein that he believed the money was "drug" proceeds. Officer Worley did not state that he believed the money was "marijuana" proceeds. Also, in the parties' stipulation of facts, the parties agreed that Bronstein asked Officer Worley if he would be able to show receipts concerning the money found in the vehicle, "as long as no more drugs" were found in his possession. Further, the parties agreed that Officer Worley's drug dog was an animal certified to detect the odor of "controlled substances" and not just "marijuana." Moreover, Bronstein's trial brief, filed before the trial began, addresses whether there was a connection between the money and the illegal drug trafficking enterprise. Throughout the trial, Bronstein failed to object to the government's attempt to connect his proceeds with "controlled substances" and not limited to "marijuana." Bronstein was on notice that the government would discuss the potential relationship of the currency found in Bronstein's vehicle to "controlled substances."

Therefore, we find no merit to Bronstein's contention that the district court's decision to grant the government's request to amend the Pretrial Order to include "controlled substance" was prejudicial to Bronstein. We conclude that the district

court did not abuse its discretion by amending the Pretrial Order to be conformed to the evidence introduced–and not objected to–at trial.

## C. *Forfeiture of Proceeds*

Finally, Bronstein argues that the government failed to demonstrate a "substantial connection" between Bronstein's possession of marijuana and the currency found in his vehicle, which the government sought to forfeit. Bronstein argues that the only connection between the marijuana and the currency was the mere fact that Bronstein possessed both while driving to northern California.

Bronstein's currency was seized pursuant to 21 U.S.C. § 881.[2] Section 881(a)(6) is a weapon in the war on drugs. *United States v. One Hundred Thirty Thousand Fifty-Two Dollars ($130,052.00) in U.S. Currency*, 909 F.Supp. 1506, 1512 (M.D. Ala. 1995). Pursuant to 21 U.S.C. § 881(a)(6), all money furnished or intended to be furnished in exchange for illegal drugs, all drug proceeds, and all money used or intended to be used to facilitate illegal drug trafficking is subject to civil forfeiture. *United States v. Thirty-Nine Thousand Eight Hundred Seventy-Three and No/100 Dollars ($39,873.00)*, 80 F.3d 317, 318 (8th Cir. 1996).

---

[2] Section 881(a)(6) provides for the forfeiture of:

[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6) (citations omitted).

In a forfeiture action under § 881, the United States bears the initial burden of establishing by a preponderance of the evidence that the property is substantially connected to drug trafficking. 18 U.S.C. § 983(c)(1) and § 983(c)(3). Circumstantial evidence can be used by the United States to establish its burden of proof. *United States v. Ten Thousand Seven Hundred Dollars and No Cents in U.S. Currency*, 258 F.3d 215, 224 n.6 (3rd Cir. 2001). In reviewing a forfeiture proceeding, we must accept the district court's factual findings in support of its conclusion that the government demonstrated by a preponderance of the evidence a connection of Bronstein's property to drug trafficking unless those findings are clearly erroneous. *$39,873.00*, 80 F.3d at 318. The district court's determination that the government carried its burden based upon those factual findings, however, is subject to de novo review as a mixed question of law and fact. *Id.*

Here, the district court found that the government had met its burden of proving by a preponderance of the evidence–even if circumstantial–that Bronstein's property was substantially connected to drug trafficking. In reaching this conclusion, the district court relied on its findings that Bronstein admittedly possessed marijuana on his person and clothes, that he admitted that he was a drug user, that he had an unusually large amount of cash that had been carefully concealed in seven vacuum-sealed bags, and that a drug dog alerted to the seized currency. In contrast, Bronstein claimed that the money represented his life savings, money from his uncle, and the closing out of his mineral and gem business. The court did not find Bronstein's proffered explanations credible.

Our de novo review of the district court's substantial connection determination similarly concludes that there existed sufficient evidence to establish by a preponderance of the evidence a substantial connection between Bronstein's property and drug trafficking. First, we have recognized that possession of a large amount of cash (here, nearly $85,000) is strong evidence that the cash is connected with drug

activity. *United States v. U.S. Currency, in Amount of $150,660.00*, 980 F.2d 1200, 1206 (8th Cir. 1992). Second, Bronstein undisputedly possessed illegal drugs at the time of the money discovery. *$39,873.00*, 80 F.3d at 319. Third, the dog's alert to Bronstein's currency provides some–albeit slight–indication that Bronstein's money was connected to drug trafficking. *United States v. $141,770.00 in U.S. Currency*, 157 F.3d 600, 604 (8th Cir. 1998) (concluding that the dog's alert to the seized money supported the government's contention that the currency was substantially connected to illegal drugs).

Additionally, Bronstein's behavior undermines the credibility of his assertions of legitimate reasons for possessing the money. During the traffic stop, Bronstein asked Officer Worley what constitutes a "user amount" of marijuana. He readily admitted to possessing the marijuana that the officer had already detected but did not disclose the additional small amount found in the backpack in his trunk. Bronstein initially attempted to conceal the money's presence by falsifying to Officer Worley his ability to open the trunk. Then, when discovery of the money was imminent, he attempted to explain the money's presence. Bronstein transported the bulk of the money in vacuum-sealed bags–a common ploy to mask odors such as might be detected by dog searches. We conclude that the district court did not err in finding that the government met its burden of showing a substantial connection between Bronstein's property and drug trafficking by a preponderance of the evidence.

For the foregoing reasons, the judgment of the district court is affirmed.

_____