# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3435

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| $117,920.00 in United States Currency, | * | District Court for the |
| | * | District of Nebraska |
| Defendant, | * | |
| | * | |
| Mehrdad Abdali Soosan, also known as | * | |
| John Soosan, | * | |
| | * | |
| Claimant/Appellant. | * | |

_____

Submitted: June 24, 2005
Filed: July 13, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Mehrdad Soosan appeals from a judgment of forfeiture against $117,920.00 in United States currency found in a search of his vehicle, arguing that he did not consent to the search and that the government failed to demonstrate a substantial connection between the money and drug trafficking. We affirm.

On December 16, 2002, Nebraska State Patrol Trooper Andrew Duis stopped Soosan for making an improper pass while traveling west on Interstate 80. After informing Soosan of the reason for the stop, Duis requested his license and vehicle rental agreement. Soosan mentioned that he was in the state visiting his sister in Lincoln. The trooper asked Soosan to accompany him to the patrol car, and he agreed. Soosan told Duis that he had flown from California to the east coast in order to spend an evening with his brother and then rented the car for the return trip because of a snow storm in New York. When the trooper commented that Soosan was traveling more than he personally ever had, Soosan suggested that Duis come visit his California home the following summer.

Soosan's offer of hospitality raised the officer's suspicions. After issuing a warning for the traffic violation and indicating that Soosan could be on his way, the trooper asked him whether he would be willing to answer a few questions. He agreed, and Duis asked if he had ever been arrested. Soosan denied having a history of arrests, which was contrary to information Duis had received from the dispatchers. Soosan also stated that he did not have guns, drugs, or substantial amounts of currency in his vehicle. The trooper requested Soosan's permission to search the car, and he later testified that Soosan had replied with "something to the effect of 'I guess if you want to.'"

In the trunk of Soosan's car the officer found four separate bags. One contained a digital scale. Another held trash compactor bags, ziplock bags, plastic wrap, and three cans of air freshener. The trooper knew from his training and experience that all these items are used in packaging marijuana. A third bag smelled to the officer like raw marijuana; inside it was an empty sack with the same odor. Hidden beneath clothing in the fourth bag, the trooper found a plastic sack containing twenty bundles of United States currency totaling $117,920.00. The officer suspected that the items in the trunk were associated with drug activity and asked that Soosan accompany him to State Patrol Headquarters. Soosan agreed.

At headquarters Soosan spoke with a different patrol officer. He gave him a more detailed explanation of his travels on the east coast and stated that his mother had brought the currency from Iran to the United States in 1979 and given it to him for safekeeping. He added that he was planning to use it to start a business. While Soosan was being interviewed, another officer conducted a test on the currency. He gathered some money from his colleagues and exposed the bills to a drug dog who did not react to them, but the dog did alert to Soosan's currency. The currency was then seized, and Soosan was given a receipt for it.

On May 23, 2003 the United States filed a civil forfeiture action under 21 U.S.C. § 881(a)(6), alleging that the money found within Soosan's vehicle was either proceeds traceable to the exchange of a controlled substance or intended to be used to facilitate the possession and distribution of a controlled substance. Soosan filed a claim asserting ownership of the money. Both parties consented to having the matter tried by a magistrate judge. At trial Soosan testified that he had not consented to the search of his car and that he had lied about not having currency because he was afraid that he could be shot and buried in the cornfields. Soosan denied that any of the materials in his trunk were connected to drug trafficking or smelled like marijuana.

The court[1] found that Soosan had consented to the search and that the government had proven a substantial connection between the money and drug trafficking. Judgment was entered on August 13, 2003, ordering the forfeiture of the currency. Soosan later moved for a new trial and submitted an affidavit from an audio analyst who had listened to a recording of the conversation between Duis and Soosan in the state patrol car. The analyst found it was not possible to determine exactly what Soosan had said to the trooper in response to his request to search

_____

[1]The Honorable F. A. Gossett III, United States Magistrate Judge for the District of Nebraska.

-3-

Soosan's vehicle. The court denied the motion for a new trial, and Soosan appeals. He seeks reversal of the judgment of forfeiture and a remand to the trial court with instructions to return the defendant currency to him.

Soosan argues that the court erred in finding that he consented to the officer's search of his vehicle. He contends that his alleged response to the request for his consent ("I guess if you want to") was not sufficiently specific and unequivocal to authorize a search, citing United States v. Reid, 226 F.3d 1020, 1026 (9th Cir. 2000). He also notes that his expert's analysis of the audiotape could not conclusively determine what he had said to the trooper.

The magistrate judge's finding of consent is reviewed for clear error, and we find none here. United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001). Soosan's reply to the trooper was sufficient to cause a reasonable person to believe he had consented and was therefore not impermissibly equivocal or unspecific. See id. The trial court found the trooper's testimony credible and he testified that Soosan had consented. The court's credibility determinations are entitled to deference, and Soosan has not pointed to any contradictory evidence other than his own testimony, which the magistrate judge found to lack credibility. See United States v. Welerford, 356 F.3d 932, 936 (8th Cir. 2004). We conclude that the court did not clearly err in finding that Soosan consented to the search of his car.

Soosan also argues that the government failed to establish by a preponderance of the evidence that the currency was substantially connected to drug trafficking, as is required for civil forfeiture under 21 U.S.C. § 881(a)(6). See United States v. $84,615 in United States Currency, 379 F.3d 496, 501 (8th Cir. 2004) (citing 18 U.S.C. § 983). He argues further that there was not probable cause to support the seizure of the currency. Soosan contends that the amount of money cannot alone justify forfeiture and that the defendant currency was not packaged in a manner demonstrating a substantial connection to the drug trade, in contrast to United States

v. $141,770.00 in United States Currency, 157 F.3d 600, 604 (8th Cir. 1998), where the forfeited currency was wrapped in drier sheets and multiple plastic bags and had been found concealed in the ceiling of a van. Soosan argues that no evidence connected the other contents of his trunk—including the plastic bags, plastic wrap, cans of air freshener, and digital scale—to either the currency or to drug trafficking activities. Finally, Soosan contends that the drug dog's alert to the money is of little probative value since much of the currency in circulation is contaminated by drugs.

After our de novo review, see $84,615 in United States Currency, 379 F.3d at 501, we conclude the government has demonstrated by a preponderance of evidence that there was a substantial connection between the defendant currency and drug trafficking. Soosan was found with a large amount of cash, $117,920.00, and we have found the possession of lesser amounts of currency to be "strong evidence" connecting the money to illegal drug activities. Id. ($84,615); United States v. Thirty-Nine Thousand Eight Hundred Seventy-Three and No/100 Dollars ($39,873.00), 80 F.3d 317, 318 (8th Cir. 1996). There was also evidence of concealment, and this supports a connection between the money and drug trafficking. See $84,615 in United States Currency, 379 F.3d at 502 (lies and packaging money to mask drug odors were evidence of connection to drug trafficking). The money in Soosan's trunk was bundled in rubber bands, enclosed within a plastic sack, and hidden beneath clothing in a duffle bag. Soosan lied to the investigating officer about not having a large amount of currency, and he had materials with him that the officer knew were used to package drugs and conceal them from detection. The drug dog's alert to Soosan's currency and the bags smelling of marijuana in his car also support a connection between the money and drug trafficking. See $84,615 in United States Currency, 379 F.3d at 502; $141,770.00 in United States Currency, 157 F.3d at 604; U.S. Currency in the Amount of $150,660.00, 980 F.2d 1200, 1206 (8th Cir. 1992). Soosan's argument that there was not probable cause to seize the currency is also without merit.

Accordingly, we affirm the judgment of the district court.

_____