# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1902

_____

United States of America

*Plaintiff - Appellee*

v.

$48,100.00 in United States Currency

*Defendant*

John R. Nelson

*Claimant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: March 24, 2014
Filed: June 27, 2014

_____

Before LOKEN, BYE, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Claimant John R. Nelson appeals the magistrate judge's order directing forfeiture of $48,100.00 seized pursuant to a traffic stop. We reverse the order of forfeiture and remand with directions to dismiss the action.

I

This case stems from the seizure of currency pursuant to a lawful traffic stop which occurred on October 19, 2009. When stopped, Nelson was driving his parents' recreational vehicle (RV) east from Colorado toward his destination, his parents' home in Cedarburg, Wisconsin, a suburb of Milwaukee.

Nelson had set out for Colorado from Cedarburg several weeks earlier. Prior to the trip, Nelson, then twenty-two years old and living with his parents, had several discussions with his parents about the possibility of the trip leading to his permanent relocation to Colorado. Nelson's parents expected the trip would culminate in Nelson living independently in Colorado. As the date of the trip approached, Nelson's parents gave him permission to use their RV, gifted him with a GPS device for the trip, and gave Nelson additional funds to help support him during the transition.

Nelson owned a car but chose to travel in the RV at least in part to accommodate travelling with his two dogs and avoid staying in hotels. Nelson gathered approximately $50,000 in currency, the sum total of his savings, to bring along for the trip. Nelson disdained banks, preferring to store his savings in a small personal safe, which he brought to Colorado. Once there, Nelson purchased a backpack in which he began to keep the currency instead of the safe.

Nelson spent several weeks in Denver with friends. While there, he obtained a small amount of medical marijuana via one friend licensed to purchase such. Nelson also learned Denver has a municipal ordinance restricting the ownership of pit bulls. As one of Nelson's dogs was a pit bull, he risked the dog being seized if he

decided to stay in Denver. For this and other reasons, Nelson eventually decided to return to his parents' residence in Cedarburg. A Nebraska state trooper stopped Nelson for a traffic violation while Nelson was en route.

During the stop, the trooper began to suspect Nelson was transporting a large amount of high grade marijuana. Specifically, the trooper reacted to Nelson travelling in a large, uneconomical vehicle from Denver, a marijuana transportation hub city, to Milwaukee, a distribution city. The trooper also found suspicious Nelson being nervous, under-representing his criminal history,[1] and falsely claiming snow boarding had been his reason for having traveled to Colorado.

After issuing Nelson a traffic citation, the trooper asked Nelson if the RV contained drugs or guns. When Nelson told him it did not, the trooper asked to search the RV. When Nelson refused permission, the officer detained him and called in a canine unit for a sniff search. While awaiting the canine unit, the trooper told Nelson possessing only a "personal use" amount of marijuana would merely be subject to a fine. Nelson then admitted having a small amount of marijuana in the RV. Concluding he then had probable cause to search the RV, the trooper began to do so.

Inside the RV, the officer found Nelson's backpack, which contained 2.7 grams of marijuana, a marijuana grinder, several marijuana-themed magazines, and a plastic bag containing $48,100.00 in currency. Nelson had organized the currency into rubber band-secured bundles of same denomination bills. The smaller bundles were secured by a single rubber band into a larger bundle. The trooper also found Nelson's luggage, which, along with Nelson's clothes, contained a marijuana pipe and a glass jar containing seventeen grams of the marijuana Nelson had indirectly obtained from

---

[1]Nelson did not report having been charged with an unspecified drug crime while still a minor.

a medical marijuana dispensary. The trooper found no other contraband but did find a file cabinet containing Nelson's important personal documents.

The trooper arrested Nelson, cited him for possession of marijuana, and seized the currency and Nelson's cell phone. A search of the text messages and voice mail recordings on the cell phone revealed no references to any drug transactions. Nelson was eventually released. The government then filed this action, seeking forfeiture of the $48,100.00 for being substantially connected to drug trafficking.

At the forfeiture hearing, both Nelson and his father testified the currency had come from Nelson's earnings, the sale of bonds, Nelson's stock dividends, and monies given to Nelson by his relatives. The government conceded the currency had all come from legitimate sources but sought forfeiture on the theory Nelson had planned to use it to purchase narcotics in an unspecified transaction which for some unknown reason had not occurred. The government provided no affirmative evidence of the transaction.

Adopting the government's theory, the magistrate judge concluded it was more likely than not the $48,100.00 was subject to forfeiture for being substantially connected to a planned, but unconsummated, drug transaction. Nelson appeals, challenging the magistrate judge's conclusion.

II

On appeal, Nelson contends the evidence did not support the magistrate judge's conclusion the currency was substantially connected to an intended drug transaction. On review of an order of forfeiture, "[w]e review any predicate factual findings for clear error, but the ultimate conclusion as to whether those facts establish a substantial connection between seized currency and a narcotics transaction is a mixed question of law and fact that we review de novo." United States v. $124,700 in U.S.

Currency, 458 F.3d 822, 825 (8th Cir. 2006) (internal quotation marks and citations omitted). In making this determination, we consider the totality of the circumstances, applying common sense considerations. See United States v. U.S. Currency, in Amount of $150,660.00, 980 F.2d 1200, 1206 (8th Cir. 1992) (examining the "aggregate of facts" and applying "common experience considerations").

In pertinent part, 21 U.S.C. § 881(a)(6) sets forth that "all moneys . . . intended to be used to facilitate any [drug trafficking crime]" shall be subject to forfeiture. "[F]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." United States v. One 1976 Ford F-150 Pick-Up VIN F14YUB03797, 769 F.2d 525, 527 (8th Cir. 1985) (quoting United States v. One Ford Coach, 307 U.S. 219, 226 (1939)). The government bears the burden of proving money is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1).

The parties do not dispute the facts, only the conclusion to be drawn from them. Nelson contends he intended to use the money to finance his potential relocation to Denver. Nelson argues the facts support his explanation that his travel to Denver was for this purpose and his return was motivated by finding it harder to live on his own than expected and discovering a local ordinance could have led to one of his dogs being seized and put down. The government contends Nelson intended to use the currency for a planned drug transaction, arguing Nelson's travel to Denver and back was for the purpose of obtaining a large amount of marijuana to sell in Milwaukee.

Much of the affirmative evidence in this case could support either party's position. Nelson's travel with a large amount of currency is by itself suspicious. See $124,700 in U.S. Currency, 458 F.3d at 826. Equally suspicious is the way Nelson bundled the money and carried it in a plastic bag inside his backpack, because doing so is consistent with the possibility of it being drug money. See id. ("[W]e have

adopted the common-sense view that bundling and concealment of large amounts of currency, combined with other suspicious circumstances, supports a connection between money and drug trafficking."). However, there is no dispute the currency came from legitimate sources and we have previously noted "an innocent traveler might theoretically carry more than $100,000 in cash across country and seek to conceal funds from would-be thieves on the highway[.]" Id. In light of the credible testimony indicating Nelson disdained banks, Nelson merely travelling with a large sum in currency does not by itself weigh more in favor of Nelson intending to use the currency to facilitate drug-trafficking. Nor do the methods of bundling and concealment weigh more heavily in favor of Nelson intending to use the currency to facilitate drug-trafficking. If one were to travel with a large sum in currency, common sense would support having a method of keeping it organized while carrying and concealing it from would-be thieves.

Nelson's route and choice of vehicle could similarly support either party's position. Travel from the Milwaukee area to Colorado and back is equally consistent with a plan to obtain marijuana for transport and sale in Milwaukee as it is with a young man's ultimately unsuccessful attempt to move out of his parent's home and relocate to Denver. Similarly, travelling with an RV makes just as much sense for one who wants to transport a large amount of contraband as it does for one who wants to travel cross country with two dogs for the purpose of relocating.

Nelson's nervousness during the stop is also not particularly favorable to either party's theory. There was credible testimony at the hearing that Nelson was being treated for anxiety at the time of the stop. The nervousness could be also attributed to the presence of the small amount of marijuana in the RV. If anything, it runs counter to common sense to trace Nelson's nervousness during the traffic stop, which occurred while he on his way home from Colorado, to a large scale purchase of Colorado marijuana which did not take place.

Nelson's possession of marijuana and drug paraphernalia could, in other circumstances, weigh in favor of the government's theory.  See United States v. $84,615 in U.S. Currency, 379 F.3d 496, 501 (8th Cir. 2004) (concluding possession of illegal drugs is consistent with drug trafficking).  However, the small amount of marijuana and paraphernalia found here were far more consistent with personal use than drug trafficking.  In addition, the presence of the file cabinet containing Nelson's important personal documents weighs in favor of the purpose of Nelson's travel being a plan to relocate rather than a plan to obtain a large amount of marijuana and return to Milwaukee.

As noted by the magistrate judge, Nelson's lie to the trooper about snow boarding being his reason for travelling to Colorado weighs against Nelson's credibility.  There was no discernable reason for Nelson to offer this lie.[2]  The magistrate judge found this to tip the balance in favor of the government's theory.  We do not.  The flaw in the magistrate's reasoning on this point is concluding it is an "either-or" choice between Nelson's explanation for his travel and the government's, such that if one explanation is doubtful, the other becomes more likely as a result.  Had the government provided some affirmative evidence of the drug transaction it speculates that Nelson planned to engage in, this might be the case.  However, in the absence of some affirmative evidence of the alleged planned transaction, the effect on Nelson's credibility does not *necessarily* weigh in favor of the government's drug trafficking theory.  It merely weighs against the credibility of Nelson's offered explanation.  Put another way, Nelson could have been travelling for any reason he would not want to share with law enforcement, e.g., drug trafficking, guns, stalking, stolen goods, or any of a number of unlawful or embarrassing activities.  Finding his proffered reason for travel not credible means any other reason is possible.  In the

---

[2]Nelson's lies about his criminal history and not having drugs in the RV are, by contrast, readily attributable to the undisclosed drug-related charge having occurred while Nelson was a minor and Nelson wanting to avoid being cited for possession of the small amount of marijuana in the RV.

absence of any affirmative evidence suggesting it was for drug trafficking, the court would have to speculate to find the drug trafficking explanation more likely than any other.

In the end, this case may be more about what was not found in the RV. As we have noted, the government's theory about Nelson's alleged plan to obtain a large amount of marijuana to sell in Milwaukee is not supported by any affirmative evidence. This is not by itself dispositive. The government need not prove the seized currency is linked to any particular drug transaction. U.S. Currency, in Amount of $150,660.00, 980 F.2d at 1205. In addition, the government may carry its burden of proof using circumstantial evidence. $84,615 in U.S. Currency, 379 F.3d at 501; see also United States v. $117,920.00 in U.S. Currency, 413 F.3d 826, 829 (8th Cir. 2005) (presence of paraphernalia consistent with drug trafficking, drug dog's alert to currency, plus other factors, supports a connection between the money and drug trafficking).

The government's case, however, falls short. As the trooper testified, there are several things missing here which he would typically expect to find if Nelson had been planning to purchase and transport a large amount of drugs cross-country to sell. Nelson's phone, which was seized and examined, contained no texts or voice mail recordings referring to a plan to engage in trafficking. Nelson also had no firearm, the possession of which the trooper testified often goes "hand in hand" with drug trafficking. The marijuana Nelson possessed was small, consistent with personal use, and the paraphernalia in his possession was far more consistent with personal use than distribution. In the end, the government's theory about a planned transaction relies on mere speculation rather than circumstantial evidence.

Accordingly, the government has failed to carry its burden to prove it more likely than not that Nelson intended to use the seized currency in a planned drug transaction.

## III

The order directing forfeiture of the $48,100.00 is reversed.  The matter is remanded with directions to dismiss the action.

_____