# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1787
_____

United States of America

*Plaintiff - Appellee*

v.

$63,530.00 in United States Currency

*Defendant*

Mark A. Brewer

*Claimant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: October 8, 2014
Filed: March 23, 2015
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A Sheriff's Deputy seized $63,530 in U.S. Currency from Appellant Mark Brewer during a traffic stop. The United States subsequently attempted to provide

Brewer notice of the seizure. After Brewer filed a claim asserting his interest in the currency, the United States initiated a judicial forfeiture proceeding. Brewer then filed a motion to dismiss, alleging that notice was deficient and that the government had failed to plead sufficient facts to allow the complaint to proceed. The district court[1] denied the motion to dismiss and proceeded to a bench trial, after which it ordered the currency forfeited. Brewer appeals, asserting that the district court erred in denying the motion to dismiss on the basis of deficient notice and erred in finding that a substantial connection existed between the seized currency and drug activity, that Brewer had failed to prove he was an innocent owner of the funds, and that he had failed to make a prima facie showing of gross disproportionality to sustain an Eighth Amendment Excessive Fines challenge. We affirm.

I.

On November 28, 2011, Douglas County Sheriff's Deputy Dave Wintle initiated a traffic stop of Mark Brewer after observing him crossing three lanes of traffic on a Nebraska interstate without signaling. Deputy Wintle approached Brewer's vehicle and requested Brewer's license and registration. Deputy Wintle also requested that Brewer sit in the police cruiser while he conducted the traffic stop. Brewer complied. Deputy Wintle examined Brewer's license and registration, and began to run a criminal history check. While running this check, Deputy Wintle questioned Brewer about his travel plans. Brewer told Deputy Wintle that he was traveling to Los Angeles to visit his uncle, and was hopeful that his uncle would provide him with employment. He informed Deputy Wintle that he did not have enough money for a hotel and was staying at rest stops along his route. He also

---

[1]The Honorable F.A. Gossett, United States Magistrate Judge for the District of Nebraska, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

informed Deputy Wintle that he was considering purchasing a house and had been in the Air Force, but was currently out of work and was receiving disability.

Deputy Wintle's record check revealed no major violations. He informed Brewer that he would not be issuing a citation and returned Brewer's license and registration. He then asked Brewer if he could ask him a few more questions, and Brewer agreed. Deputy Wintle asked several questions relating to the contents of Brewer's vehicle, including whether Brewer possessed any weapons, drugs, or large amounts of currency. Brewer answered no to each of these questions. Deputy Wintle then obtained Brewer's consent to conduct a sniff search of the vehicle with a drug dog trained to detect the odor of narcotics. The drug dog alerted both on the driver's side of the vehicle and in the trunk. When Deputy Wintle asked Brewer about any possible reason the dog might have alerted, Brewer initially claimed he could think of no reason, but later offered that a bag in the front of the vehicle "might have been around something a few weeks ago." Appellant's Br. 11.

After the drug dog's alert, Deputy Wintle patted Brewer down for weapons. Brewer had no weapons on his person, but Deputy Wintle discovered $1,000 in cash in Brewer's front pocket. This currency was later returned to Brewer. Deputy Wintle then conducted a search of Brewer's vehicle. While searching the trunk, Deputy Wintle found two backpacks. When he opened one, he noticed the strong odor of raw marijuana. Inside the backpack, Deputy Wintle observed what appeared to be a plastic grocery bag. He ripped through a total of three grocery bags before he could see the contents. The bags contained 64 bundles of currency, with each bundle folded and rubber banded. The first 63 bundles were in $1,000 groupings, with the remaining bundle containing $530, for a total of $63,530. Deputy Wintle returned to the police cruiser and questioned Brewer about the currency. Brewer then admitted to possessing large amounts of currency and explained that he intended to use the money for a down payment on a house. He also told Deputy Wintle that documents

in the vehicle would confirm that the currency lawfully belonged to him. Deputy Wintle had the car towed to the Sheriff's office, where deputies conducted a further search. They located disability documents, old paystubs, and tax returns in the vehicle, along with two articles entitled "How to Make Wicked Hash" and "How to Make Weed Oil without Blowing Yourself Up." Deputies did not recover any drugs from the vehicle.

After the seizure, pursuant to 18 U.S.C. § 983(a)(1)(A)(iv), the government attempted to notify Brewer of the seizure. The government first sent four different notices on January 9, 2012, addressing two notices to "Mark A. Brewer" and two to "Mark A. Biener," a name that officers found on the documentation in Brewer's vehicle during the search. The government sent a notice under each name to two different addresses: one listed on Brewer's driver's license and one listed on the vehicle registration and insurance paperwork in the vehicle. All four of these notices were returned to sender.

On February 29, 2012, the government again sent four notices, with two notices addressed to Mark A. Brewer and two notices addressed to Mark A. Biener. The government sent all four notices to the address listed on the vehicle registration and insurance paperwork, sending two by certified mail and two via first class mail. The two notices sent via certified mail were accepted by signature, one on March 6, 2012, and one on April 13, 2012. Both certified mail receipts appeared to bear identical signatures and the April 13, 2012 receipt bore the printed name Mark Brewer. The two notices sent via first class mail were not returned.

On March 16, 2012, the government sent the final four notices, addressing two to Mark A. Brewer and two to Mark A. Biener. The government again mailed all four notices to the address found on the vehicle registration and insurance paperwork, and again sent two via certified mail and two via first class mail. The notices sent via

certified mail were accepted by signature on March 19, 2012, and April 13, 2012. Again, both certified mail receipts bore identical signatures, with the April 13, 2012 receipt containing the printed name Mark Brewer. The notices sent via first class mail were not returned.

The government also published notice in the Wall Street Journal. The notice in the Wall Street Journal ran once a week for three successive weeks, appearing in editions on January 23, 2012, January 30, 2012, and February 6, 2012.

The first notice Brewer received was sent on February 29, 2012, and accepted on March 6, 2012, 99 days after the November 28, 2011 seizure of the currency. On March 21, 2012, Brewer filed a claim for the seized property, ending the non-judicial proceedings and triggering the government's duty to file a complaint for forfeiture within 90 days.

On June 12, 2012, the United States filed a complaint seeking forfeiture of the currency as either proceeds from drug transactions or money to facilitate drug transactions. On July 11, 2012, Brewer filed a timely verified claim asserting his interest in the seized currency. Brewer then filed a motion to dismiss, alleging that the United States did not notify him of the seizure within 90 days of the seizure, as required by statute. Brewer did not argue that the government's deficient notice prejudiced him by preventing him from filing a timely claim; instead, he argued that the government's failure to comply with the technical requirements of the statute warranted dismissal. Brewer also alleged that the complaint did not contain sufficiently detailed facts to support the reasonable belief that the government would be able to meet its burden of proof.

The district court denied the motion to dismiss, finding that the United States had made reasonable attempts to notify Brewer of the forfeiture proceedings within

the applicable 90-day time period and that any delay in receiving notice was "minimal." The district court also found that the complaint contained sufficiently detailed factual matter to satisfy the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which govern pleading requirements for forfeiture proceedings.

The district court then held a bench trial regarding the forfeiture complaint. Brewer argued: (1) that the government failed to prove a substantial connection between the seized currency and drug activity, (2) that he provided sufficient evidence to prove that he was an innocent owner of the currency, and (3) that seizure of the $63,530 amounted to an excessive fine in violation of the Eighth Amendment because he was neither arrested nor charged in connection with the traffic stop. The district court found in favor of the United States and ordered the currency forfeited. The district court found that the United States provided sufficient evidence to prove a substantial connection between the currency and drug activity, including the quantity of the currency, the manner in which it was bundled and concealed, Brewer's dishonest answer denying that he possessed large amounts of currency, and the drug dog's alert for the odor of narcotics. The district court also found that Brewer did not provide sufficient evidence to prove he was an innocent owner, specifically finding that he was not a credible witness because his testimony was primarily self-serving and uncorroborated. Finally, regarding Brewer's Eighth Amendment argument, the district court found that Brewer failed to make a prima facie showing of gross disproportionality as required when challenging a fine under the Excessive Fines Clause. This appeal followed.

II.

We first consider whether the district court erred in denying Brewer's motion to dismiss. Brewer alleges that he did not receive notice of the seizure within the

-6-

proper 90-day time frame and that the district court should have dismissed the forfeiture complaint based on deficient notice. We review a district court's denial of a motion to dismiss de novo, viewing the allegations in the complaint in the light most favorable to the plaintiff. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996).

Under 21 U.S.C. § 881, the government may seek forfeiture of any money that is connected to a violation of drug laws. When the government seeks forfeiture of money on this basis, it must give notice of the forfeiture to a claimant within 90 days of seizure. 18 U.S.C. § 983(a)(1)(A)(iv) (providing notice requirements when state or local law enforcement seizes property and turns it over to federal law enforcement for forfeiture under federal law). If the government knows of a claimant's interest in the currency but fails to take reasonable steps to notify him of the proceedings and the claimant did not know or have reason to know of the seizure with time to file a claim, the claimant may seek to set aside the forfeiture. 18 U.S.C. § 983(e)(1). Reasonable attempts to notify a claimant may include sending written notice to the claimant's last known address and publishing notice in a newspaper of general circulation. Madewell v. Downs, 68 F.3d 1030, 1046-47 (8th Cir. 1995).

The government sent twelve written notices to Brewer at two different addresses and under two names believed to be associated with Brewer. It also published notice in the Wall Street Journal, a well-known newspaper of general circulation. See id. (holding that notice in USA Today satisfied requirement that publication notice be made in a newspaper of general circulation). These attempts to provide notice are more comprehensive than notice attempts our court has held to be sufficient for similar federal administrative forfeiture proceedings. See id. (finding that government satisfied notice requirements by sending a single notice to claimant's last known address and publishing notice in USA Today when seeking forfeiture pursuant to 21 U.S.C. § 881). Although notice did not reach Brewer until 99 days

after the seizure occurred, the government made reasonable attempts, based on the available information, to notify Brewer of the seizure.

The evidence also demonstrates that Brewer was well aware of the seizure and could timely file a claim. Brewer was present at the traffic stop when Deputy Wintle seized the currency, and thus a minimal delay in receiving the government's notice of seizure would not have precluded him from filing a timely claim. In fact, he did just that by filing a claim for the funds shortly after receiving the government's notice. Because the government took reasonable steps to notify Brewer of the forfeiture proceedings and the delay in receipt did not prevent Brewer from filing a timely claim, we affirm the district court's denial of the motion to dismiss.

III.

When reviewing forfeiture proceedings, we review a court's factual findings for clear error and the ultimate determination of whether forfeiture is warranted de novo. United States v. Dodge Caravan Grand SE/Sport Van, 387 F.3d 758, 761 (8th Cir. 2004). To successfully effectuate the forfeiture of seized currency under 21 U.S.C. § 881 , the government must prove, by a preponderance of the evidence, that a substantial connection exists between the seized currency and drug activity. 18 U.S.C. § 983(c). A court makes a determination of whether the government has satisfied this burden based on the totality of the circumstances. United States v. $124,700 in U.S. Currency, 458 F.3d 822, 826 (8th Cir. 2006). A court may consider circumstantial evidence when conducting a totality-of-the-circumstances review in a forfeiture proceeding. United States v. $84,615 in U.S. Currency, 379 F.3d 496, 501 (8th Cir. 2004). Possession of large amounts of currency provides strong evidence of a connection between the currency and drug activity. Id. at 501-02. Other circumstantial evidence that helps prove a substantial connection may include

a drug dog's alert, the particular packaging of the currency, or a claimant's behavior during a traffic stop.  Id.

We first consider whether the district court clearly erred in finding that the government proved that a substantial connection existed between the seized currency and drug activity.  Brewer alleges that no link exists between the seized currency and drug activity other than the drug dog's alert, and, because the government provided no statistical support for the alert, it was inconsequential.

The government provided sufficient circumstantial evidence to support the finding of a substantial connection between the currency and drug activity.  This evidence included the amount of currency seized, the way it was concealed within three plastic grocery bags inside a zipped backpack in the trunk of the vehicle, the manner in which it was bundled in thousand-dollar increments, Brewer's dishonest answer to Deputy Wintle's question about possessing large amounts of currency, his statement about not having enough money to pay for a hotel, the drug dog's alert, the deputy's observation that the backpack smelled strongly of raw marijuana, and the articles relating to marijuana found in the vehicle.  Our court has found a substantial connection existed in very similar circumstances.  See $124,700 in U.S. Currency, 458 F.3d at 826 (finding a substantial connection when claimant was carrying a large amount of currency, had concealed currency inside a cooler, a drug dog alerted, and claimant lied about the presence of currency in the vehicle); United States v. $117,920.00 in U.S. Currency, 413 F.3d 826, 829 (8th Cir. 2005) (holding that a substantial connection existed when claimant possessed large amounts of currency; currency was bundled in rubber bands, enclosed in a plastic sack, and concealed beneath clothing in a duffel bag; a drug dog alerted; and claimant lied about possessing large amounts of currency).

Brewer questions the drug dog's alert by asserting that all currency in circulation in the United States is tainted with trace amounts of drug residue. See Muhammed v. Drug Enforcement Agency, 92 F.3d 648, 653 (8th Cir. 1996) ("[I]t is well established that an extremely high percentage of all cash in circulation in America today is contaminated with drug residue. . . . The fact of contamination, alone, is virtually meaningless and gives no hint of when or how the cash became so contaminated."). This argument is unpersuasive. Although this court has recognized the potential limitations of a drug dog's alert by characterizing it as "some—albeit slight—indication" of drug activity, we still recognize that an alert carries weight in considering whether a substantial connection exists. See $84,615 in U.S. Currency, 379 F.3d at 502; see also $124,700 in U.S. Currency, 458 F.3d at 826; $117,920.00 in U.S. Currency, 413 F.3d at 829. And, even if the drug dog's alert were inconsequential, ample other evidence exists to support the finding of a substantial connection. In sum, the government has proved, by a preponderance of the evidence, that a substantial connection exists between the seized currency and drug activity, and we affirm the district court's finding that such a connection exists.

IV.

We next consider whether the district court clearly erred in finding that Brewer failed to prove that he was an innocent owner of the seized currency. Brewer alleges that his explanation for carrying large amounts of cash—that he had a history of Post Traumatic Stress Disorder (PTSD) and a distrust for the government, including financial institutions—was sufficient to prove that he was an innocent owner. Under 18 U.S.C. § 983(d), if the government meets its burden of proving a substantial connection between seized currency and drug activity, a claimant may still defeat the forfeiture by proving, by a preponderance of the evidence, that he is an innocent owner of the currency. An innocent owner is defined as an owner who "did not know of the conduct giving rise to forfeiture," or "upon learning of the conduct giving rise

-10-

to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." Id.

Brewer asserts that he satisfied his burden of proving that he is an innocent owner by explaining his history of PTSD and his distrust of the government, as well as by providing documentation accounting for some amount of the money seized. But this is not an argument that Brewer was unaware of the drug activity that gave rise to the forfeiture. It is merely an attempt to reargue the connection between the seized currency and drug activity. To that extent, Brewer merely challenges the district court's credibility determination. The district court specifically found that Brewer was not a credible witness because his testimony was uncorroborated and self-serving. The district court also found Deputy Wintle to be a credible witness. A trial judge is afforded great deference regarding credibility determinations because the judge is in the best position to assess the witness's testimony for credibility. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985). The trial judge hears the "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Id. As a result, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses . . . that finding, if not internally inconsistent, can virtually never be clear error." Id.

Nothing in the record suggests that the district court's determination that Deputy Wintle was a credible witness and Brewer was not credible is "internally inconsistent" so as to constitute clear error. We will not overturn this credibility determination. Because Brewer presented no other evidence to show that he was an innocent owner of the funds, we affirm the court's finding that Brewer failed to show, by a preponderance of the evidence, that he was an innocent owner of the seized currency.

V.

Finally, we consider whether the district court erred in determining that the forfeiture of the seized currency did not amount to an Eighth Amendment violation. Brewer argues that the forfeiture of the currency amounts to an excessive fine under the Eighth Amendment because he was never charged with any crime nor did officers recover any drugs from his vehicle.

The Eighth Amendment Excessive Fines Clause applies to civil forfeitures of property used to facilitate drug offenses. Austin v. United States, 509 U.S. 602, 622 (1993). But the Excessive Fines Clause does not apply to forfeiture of currency classified as proceeds of a drug offense. See United States v. Alexander, 32 F.3d 1231, 1236 (8th Cir. 1994) ("Forfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity."); see also United States v. Sum of $185,336.07 U.S. Currency Seized, 731 F.3d 189, 194 (2d Cir. 2013) (holding that the Eighth Amendment Excessive Fines Clause does not apply to forfeitures of illegal drug sale proceeds and noting that all other circuits considering the issue have reached the same conclusion).

The record here does not make clear whether the seized currency constitutes property used to facilitate a drug offense or proceeds from a drug offense. For the purposes of analysis, however, we will assume that the currency facilitated a drug offense and is thus subject to the Excessive Fines Clause. Compliance with the Excessive Fines Clause requires the amount of currency forfeited to bear some relationship to the gravity of the offense that it is designed to punish. United States v. Bajakajian, 524 U.S. 321, 326 (1998). A claimant seeking to set aside a fine as excessive has the burden of making a prima facie case of gross disproportionality. Alexander, 32 F.3d at 1236. If the claimant meets this burden, the court must then consider the government's evidence of proportionality. Id. at 1236-37. Factors a

-12-

court may consider in determining if a fine is disproportionate include the extent and duration of the criminal conduct, the gravity of the offense in comparison to the severity of the criminal sanction, and the value of the forfeited property.  Dodge Caravan Grand SE/Sport Van, 387 F.3d at 763.

Brewer has failed to make a prima facie showing of gross disproportionality. Brewer has presented no evidence regarding the amount of the fine in relation to the crime it is designed to punish.  Instead, Brewer relies entirely on the argument that the forfeiture is necessarily an excessive fine because no drugs were found in the vehicle and he was never charged with any crime resulting from the traffic stop.  But we have upheld civil forfeitures in instances in which the claimant was not charged with a crime and no drugs were found in the vehicle.  See $124,700 in U.S. Currency, 458 F.3d at 826 (finding forfeiture was warranted even when drugs were not recovered with currency); $117,920.00 in U.S. Currency, 413 F.3d at 829 (upholding forfeiture of currency when no drugs were located in search of vehicle).  Without any other evidence, Brewer fails to make a prima facie showing of gross disproportionality, and thus we are not required to consider the government's evidence of proportionality.  We affirm the district court's determination that the forfeiture did not constitute an excessive fine under the Eighth Amendment.

VI.

For the foregoing reasons, we affirm the denial of Brewer's motion to dismiss and the  order granting forfeiture of the currency seized during the traffic stop.

_____