2024 IL App (4th) 231465

NO. 4-23-1465

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 25, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Ogle County |
| $33,260 UNITED STATES CURRENCY, | ) | No. 23MX3 |
| Defendant, | ) | |
| (Hue Xiong, | ) | Honorable |
| Claimant-Appellee). | ) | John C. Redington, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Steigmann concurred in the judgment and opinion.
Justice Doherty dissented, with opinion.

**OPINION**

¶ 1 Pursuant to the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 2022)), the State initiated civil forfeiture proceedings against $33,260 in United States currency found in the vehicle of claimant, Hue Xiong, during a traffic stop. Following the presentation of the State's case-in-chief at a forfeiture trial, the trial court granted claimant's motion for a directed finding, dismissed the State's forfeiture complaint, and ordered that the currency be returned to claimant. The State appeals, arguing that the court erred in granting claimant's motion for a directed finding because it presented sufficient evidence to establish a *prima facie* case for forfeiture. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3           On January 12, 2023, the State initiated civil forfeiture proceedings against $33,260 in United States currency by filing a "Petition for Preliminary Determination Hearing," requesting the trial court conduct a hearing to determine whether probable cause existed that the currency was subject to forfeiture. Following the hearing, the court entered a written order finding probable cause to believe the currency was subject to the Forfeiture Act and ordered that it be held until the conclusion of the forfeiture proceedings.

¶ 4           On January 25, 2023, the State filed a "Notice of Pending Forfeiture," informing claimant that the property would be forfeited unless he filed a verified claim for the return of the property. The State indicated in its notice, in pertinent part, that the property was seized because it was "used or intended to be used to violate the Cannabis Control Act or the Controlled Substances Act."

¶ 5           On March 13, 2023, claimant filed a "Verified Claim for the Return of Property." He claimed a personal property interest in the currency and maintained that it was not subject to forfeiture. According to claimant, when the money was seized, he was returning home from a trip after visiting family in California. While in California, two of claimant's family members "repaid a previously loaned amount of cash, given to them by [him,]" and the money seized represented the repayment of that loan. Claimant asserted that, on their drive home from California, he and "his wife, Bao Moua, made several sight-seeing stops, including stops in Utah and possibly Colorado."

¶ 6           On November 20, 2023, the State filed a complaint for forfeiture, pursuant to the Forfeiture Act. The State alleged that on January 5, 2023, police officers initiated a traffic stop on a Chevrolet Silverado pickup truck driven by claimant. The officers subsequently searched the

vehicle and located $33,260 in currency. The officers smelled cannabis inside the vehicle but were unable to locate any; they also found a handgun in a case in the bed of the truck. The State alleged that

> "the $33,260 was used or intended to be used to commit a felony violation of the Illinois Cannabis Control Act [(720 ILCS 550/1 *et seq.* (West 2022))], or was furnished or intended to be furnished in exchange for cannabis, or is a proceed traceable to such an exchange in violation of the Illinois Cannabis Control Act."

¶ 7 On November 21, 2023, the trial court conducted a bench trial on the State's forfeiture complaint. At the outset, the court indicated that claimant's daughter was present at the hearing to "[i]nterpret what's being said in English to [claimant]."

¶ 8 Jacob Breitbach, a sheriff's deputy with the Ogle County Sheriff's Office, testified that, on January 5, 2023, he observed a black Chevrolet Silverado pickup truck commit a traffic violation while driving on the interstate. Deputy Breitbach initiated a traffic stop of the vehicle and identified the driver as claimant and the passenger as claimant's wife. Deputy Breitbach's dashcam footage, depicting the traffic stop and search of claimant's vehicle, was admitted into evidence without objection and published to the court. Prior to stopping claimant's vehicle, Deputy Breitbach had received a phone call from another police officer, informing him that claimant's vehicle was suspected of being "involved in some nature of trafficking." Deputy Breitbach testified that when he first approached claimant, he "appeared very nervous. He lacked eye contact with me. I also observed his hands to be shaking pretty rapidly throughout our conversation." Claimant gave Deputy Breitbach consent to search his vehicle. Deputy Breitbach testified that he smelled a "very strong" odor of cannabis while searching the vehicle. During the search, Deputy Breitbach located on the front passenger seat "stacks of obvious currency *** wrapped in rubber bands.

Placed with it were three bundles of a vacuum-sealed aluminum-type material. It was the exact size as the currency located beside it." Deputy Breitbach also located a "large amount of rotten fruits" in the back of the vehicle and an unloaded firearm stored in a protective case in the bed of the truck. He testified that based on his training and experience, rotten fruit is sometimes used as a "concealing agent to mask the odor of" cannabis. Deputy Breitbach further testified that clothing was strewn about the vehicle, making it "appear as if somebody ha[d] been staying in the vehicle."

¶ 9         John Shippert, a sheriff's deputy with the Ogle County Sheriff's Office, testified that he was part of "the Special Operations Unit and [a] K-9 handler." Deputy Shippert assisted Deputy Breitbach with the search of claimant's vehicle, and his dashcam footage was admitted into evidence without objection and published to the court. Deputy Shippert testified that he walked his K-9 around claimant's vehicle; the K-9 "indicated on the back of the vehicle" and then alerted to the passenger side of the vehicle. Deputy Shippert informed claimant that his K-9 had alerted to his vehicle and then asked claimant if, among other forms of contraband, he had large amounts of "currency" in the vehicle. Claimant said that he did not. The court interjected to clarify with Deputy Shippert that he had used the word "currency" rather than "money." After the officers located the money, claimant informed Deputy Shippert that he had misunderstood his initial question. Claimant told Deputy Shippert that he had "approximately $32,000 and that he had gotten the money back from his cousins in California." When asked by counsel for the State whether claimant explained to him why his cousins had his money, Deputy Shippert testified, "It was a little difficult to understand him, but I believe he said that he had loaned his cousins money and they were paying him back." Claimant told Deputy Shippert that he had been in California for a few days and stopped in Utah on his drive home.

¶ 10          Deputy Shippert testified that there "was a raw odor, overwhelming smell of cannabis" in claimant's vehicle and all of the luggage therein. He further testified that when he and another officer subsequently returned to the police station to count the money, they "were hit with the raw odor of cannabis inside of the vacuum-sealed bag, inside of the tin foil wrapped around the money." Deputy Shippert testified that he did not find any empty bags in the vehicle and all of the luggage was full of clothing. On cross-examination, Deputy Shippert testified he had received information from other agencies that claimant's vehicle had been traveling in an unusual route. When asked what was unusual about the vehicle's route, Deputy Shippert responded, "It spent a short amount of time in the destination that it was at, I believe California, turned around and then came back through Las Vegas, Colorado, and then to Iowa." Claimant's counsel pressed Deputy Shippert to articulate what was unusual about the route, and Deputy Shippert testified that he "was just informed by outside agencies to be on the lookout for this vehicle." Deputy Shippert testified that they searched the entire vehicle but were unable to locate any marijuana.

¶ 11          Ty Moore, a sergeant with the Illinois State Police, testified that he was "the commander of the State Line Area Narcotics Team, SLANT, in Rockford." The trial court accepted Sergeant Moore as an expert in drug trafficking and drug dealing. Sergeant Moore testified that he was not involved firsthand in the instant case, but he had reviewed the relevant reports and physical evidence. Sergeant Moore testified that drug traffickers are known to drive to states such as Arizona, Colorado, and California, where the laws on growing and possessing cannabis are less strict. "[T]hey'll make a trip out there in order to pick it up and haul it back and traffic it back." Sergeant Moore testified that when drug traffickers "start shipping or transporting either money or drugs, they tend to use foil or some other wrapping in order to conceal it from law enforcement." Sergeant Moore indicated that the money recovered from claimant's vehicle consisted of mostly

$100 and $20 bills, which was common for the drug trade. He opined that somebody in possession of approximately $30,000 in cash would be more likely to have sold cannabis rather than preparing to purchase it. Sergeant Moore testified that it was common for drug traffickers to carry a firearm to protect themselves from either the person "they've done that transaction with, to anyone who's trying to rob them that may know that they're carrying or holding a large sum of money or large sum of drugs." Sergeant Moore testified that a pound of cannabis was worth anywhere from $600 to $1200 in Illinois and that a pound of cannabis was approximately the size of a brick.

¶ 12        After the State presented its case-in-chief, claimant moved "for a directed finding or a directed verdict," stating, "I don't believe the State has established their burden or met their burden. They are just allegations here at this time." The trial court granted claimant's motion and provided the following reasoning in open court:

> "THE COURT: I got a lot missing here. The supposition is that at some point in time, [claimant] had a significant amount of cannabis somewhere in his truck. I don't have any empty bags. The luggage was all full.
>
> I'm going to disregard, by the way, Officer Shippert's testimony about the fact that this particular vehicle was being tracked in some fashion. I haven't heard from anybody other than his general hearsay statement that he was told. I haven't heard from anybody as to why this particular vehicle should be tracked.
>
> I heard from the first officer about this rotten fruit and how that, in his patrol officer experience, means that they're trying to cover up an odor.
>
> After that I had the special operations unit and K-9 handler in here and an expert witness in drug interdiction, neither one of which provided me any testimony that suggests that rotten fruit is commonly used to mask an odor.

I find it very hard to believe that a person is going to carry a gun to protect themselves in a drug deal and carry it in a sealed container in the back of a pickup truck.

The bottom line is, I've got money and I've got an odor. I don't believe that's enough in this particular circumstance. I'm going to grant the motion for a direct [*sic*] finding. I'm going to deny the complaint for forfeiture."

The court subsequently entered a written order granting claimant's motion, dismissing the complaint, and ordering that the money be returned to claimant.

¶ 13        This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15        On appeal, the State argues the trial court erred in granting claimant's motion for a directed finding at the close of its case where the evidence was sufficient to establish a *prima facie* case that the currency was subject to forfeiture. The State contends it satisfied its burden "to show the existence of probable cause for forfeiture of the property" because "[t]aken as a whole, the evidence clearly showed that the money had the needed nexus to drug dealing to be subject to forfeiture." Specifically, the State maintains the following evidence was sufficient to satisfy its burden:

"the amount of money [and] manner of packaging consistent with the drug trade, [claimant's] false and changing explanations for the money, the route and time taken by [claimant], the use of items to mask odor, the presence of a gun in the vehicle, and the strong, overpowering odor of cannabis in the vehicle, luggage, and on the clothes in the suitcases."

¶ 16    Before addressing the State's argument, we note that claimant challenges the sufficiency of the State's forfeiture complaint for the first time on appeal by arguing "[t]he State failed to plead *** the element of criminal activity necessary to maintain the case for forfeiture." We reject claimant's argument under the doctrine of aider by verdict. "Under that doctrine, where a defendant allows an action to proceed to verdict, that verdict will cure *** any defect in failing to allege or in alleging defectively or imperfectly any substantial facts which are essential to a right of action." (Internal quotation marks omitted.) *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60-61 (1994). Here, claimant did not challenge the sufficiency of the complaint in the trial court. Instead, he filed an answer to the complaint in which he claimed an interest in the property and denied the allegations raised by the State. Thereafter, claimant allowed the action to proceed to a forfeiture trial, at which the court granted his motion for a directed finding. Thus, the court's granting of claimant's motion for a directed finding cured any alleged defect in the State's complaint, and we reject claimant's untimely challenge to the sufficiency of the pleadings. *Id.*

¶ 17    As stated above, the State argues it satisfied its burden "to show the existence of probable cause for forfeiture of the property" because "[t]aken as a whole, the evidence clearly showed that the money had the needed nexus to drug dealing to be subject to forfeiture." However, the State's argument fails to account for the 2018 amendments to the Forfeiture Act, which, as discussed in further detail below, changed the State's burden of proof from merely having to show the existence of probable cause for forfeiture of the seized property to now requiring the State to prove by a preponderance of the evidence that the property is subject to forfeiture. Nor does claimant in his brief point out the State's mistaken reliance on the less onerous standard of proof provided for in the original version of the statute.

¶ 18          In 1990, "the General Assembly enacted the [Forfeiture Act] [citation] establishing uniform procedures for the seizure and forfeiture of drug related assets." *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 325-26 (1997). Civil forfeiture hearings under the original version of the Forfeiture Act followed a two-step procedure. See, *e.g.*, *People v. $174,980 United States Currency*, 2013 IL App (1st) 122480, ¶ 22. At the first step, the State had the burden to "show the existence of probable cause for forfeiture of the property." 725 ILCS 150/9(G) (West 2016). In interpreting the probable cause standard of proof, our supreme court found the State had to prove "facts providing reasonable grounds for the belief that there exist[ed] a nexus between the property and illegal drug activity, supported by less than *prima facie* proof but more than mere suspicion." *People v. A Parcel of Property Commonly Known as 1945 North 31st Street, Decatur*, 217 Ill. 2d 481, 505 (2005). If the State satisfied its burden of showing the existence of probable cause for forfeiture, "the matter proceed[ed] to the second step, where the burden shift[ed] to the claimant to show by a preponderance of the evidence that the claimant's interest in the property [was] not subject to forfeiture." *$174,980 United States Currency*, 2013 IL App (1st) 122480, ¶ 24 (citing 725 ILCS 150/9(G) (West 2010)). If the claimant was unable to prove that the property was not subject to forfeiture by a preponderance of the evidence, the trial court was required to order that the subject property be forfeited to the State. 725 ILCS 150/9(H) (West 2016).

¶ 19          However, in 2018, due to criticism of the burden of proof tilting heavily in the State's favor, the General Assembly amended the Forfeiture Act. Pub. Act 100-512, § 170 (eff. July 1, 2018) (amending 725 ILCS 150/9); see also 100th Ill. Gen. Assem., House Proceedings, June 23, 2017, at 5-6 (statements of Representative Guzzardi). The General Assembly eliminated the burden-shifting framework set forth in the original version of the statute and placed the burden

of proof solely on the State, while also elevating the State's burden of proof from a mere showing of probable cause to proving its case by a preponderance of the evidence. *Id.* Thus, contrary to the State's argument highlighted above, the question before us is not whether the State showed the existence of probable cause for forfeiture of the property, but whether it proved the property was subject to forfeiture by a preponderance of the evidence.

¶ 20    The Forfeiture Act's provisions apply to all property forfeitable under, among other statutes, the Cannabis Control Act. 725 ILCS 150/3 (West 2022). The Cannabis Control Act provides, in relevant part, that "everything of value furnished or intended to be furnished by any person in exchange for a substance in violation of this Act" is subject to forfeiture. 720 ILCS 550/12(a)(5) (West 2022). It is a violation of the Cannabis Control Act "for any person knowingly to manufacture, deliver, or possess with intent to deliver, or manufacture, cannabis." *Id.* § 5. Where, as here, the State has seized property under the provisions of the Cannabis Control Act and a claimant has asserted a claim against the seized property, the Forfeiture Act sets forth a specific judicial *in rem* procedure that must be followed before the property may be forfeited to the State. 725 ILCS 150/9 (West 2022). Specifically, the State "institute[s] judicial forfeiture proceedings by filing a verified complaint for forfeiture" (*id.* § 9(A)) that must include, among other things, a description of the property seized (*id.* § 9(A-10)(1)) and "the specific statutory and factual grounds for the seizure" (*id.* § 9(A-10)(4)). "Only an owner of or interest holder in the property may file an answer [to the State's complaint] asserting a claim against the property." *Id.* § 9(C). Unless the proceedings are continued for good cause, the trial court must hold a trial on the State's forfeiture complaint within 60 days of the filing of the claimant's answer. *Id.* § 9(F). The following procedure applies at the forfeiture trial if the seized property is currency or its equivalent:

- 10 -

"[T]he State, in its case in chief, shall show by a preponderance of the evidence that the property is subject to forfeiture. If the State makes that showing, the claimant shall have the burden of production to set forth evidence that the currency or its equivalent is not related to the alleged factual basis of the forfeiture. After the production of evidence, the State shall maintain the burden of proof to overcome this assertion." *Id.* § 9(G-5).

¶ 21 The Forfeiture Act is based on the federal narcotics civil forfeiture statute and, in light of that statute's success "in deterring the use and distribution of controlled substances within this State and throughout the country," the Forfeiture Act provides that its provisions are to "be construed in light of the federal forfeiture provisions contained in [chapter 881 of Title 21 of the United States Code (21 U.S.C. 881 (2018))] as interpreted by the federal courts, except to the extent that the provisions of this Act expressly differ therefrom." 725 ILCS 150/2 (West 2022). Under the federal forfeiture framework, the federal government likewise has the burden of proving by a preponderance of the evidence that the seized property is subject to forfeiture. 18 U.S.C. § 983(c)(1) (2018); see *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993) ("The burden of showing something by a preponderance of the evidence *** simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." (Internal quotation marks omitted.)). Moreover, "if the Government's theory of forfeiture is that the property *** was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3) (2018). However, the federal government "does not need to show a relationship between the property and

a particular drug transaction—only that the property was related to some illegal drug transaction." *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004).

¶ 22 "[T]he government may *** meet its burden with circumstantial evidence of the substantial connection between the subject property and illegal drug sales." *United States v. Real Property 10338 Marcy Road Northwest, Canal Winchester, Ohio*, 938 F.3d 802, 810 (6th Cir. 2019); see *United States v. $11,500.00 in United States Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013) ("The government may meet its burden with sufficiently strong circumstantial evidence linking the currency to drug trafficking in general."). In this regard, "[p]ossession of large amounts of currency provides strong evidence of a connection between the currency and drug activity. [Citation.] Other circumstantial evidence that helps prove a substantial connection may include a drug dog's alert, the particular packaging of the currency, or a claimant's behavior during a traffic stop." *United States v. $63,530.00 in United States Currency*, 781 F.3d 949, 955 (8th Cir. 2015). In determining whether the government has satisfied its burden, federal courts "look at the totality of the circumstances" and "evaluate the evidence presented with a common sense view to the realities of normal life." (Internal quotation marks omitted.) *United States v. $183,791.00 in United States Currency*, 391 F. App'x 791, 794 (11th Cir. 2010) (*per curiam*).

¶ 23 Where, as here, the claimant moves for a directed finding, the trial court is to employ a two-stage procedure in ruling on the motion. *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154-55 (1980). Our standard of review depends on whether the trial court granted claimant's motion at the first or second stage of this procedure. At the first stage of the directed-finding procedure, the court must determine "whether the plaintiff has presented a *prima facie* case by proffering at least some evidence on every element essential to [the plaintiff's underlying] cause of action." (Internal quotation marks omitted.) *In re Estate of Coffman*, 2023 IL 128867, ¶ 52. If the plaintiff fails to

present a *prima facie* case, the court should grant the motion and enter judgment for the defendant. *Id.* "Because a determination that the plaintiff has failed to present at least some evidence on every element is a question of law, such a ruling is reviewed *de novo*." *Id.* However, if the trial court determines the plaintiff has presented a *prima facie* case,

> "the court proceeds to the second part of the [directed-finding] inquiry and considers the totality of the evidence presented, including any evidence that is favorable to the defendant. In its role as the finder of fact, the court weighs all the evidence, determines the credibility of the witnesses, and draws reasonable inferences therefrom." *Id.* ¶ 53 (citing 735 ILCS 5/2-1110 (West 2020)).

"The weighing process may negate some evidence presented by the plaintiff." *Id.* "After weighing all the evidence and applying the standard of proof required for the underlying cause, the court must determine whether sufficient evidence remains to establish the plaintiff's *prima facie* case." *Id.* ¶ 54. "A reviewing court will not reverse a ruling following this weighing process unless it is contrary to the manifest weight of the evidence." *Id.*

¶ 24　　Here, the trial court provided the following reasoning in open court for granting claimant's motion for a directed finding:

> "THE COURT: I got a lot missing here. The supposition is that at some point in time, [claimant] had a significant amount of cannabis somewhere in his truck. I don't have any empty bags. The luggage was all full.
>
> I'm going to disregard, by the way, Officer Shippert's testimony about the fact that this particular vehicle was being tracked in some fashion. I haven't heard from anybody other than his general hearsay statement that he was told. I haven't heard from anybody as to why this particular vehicle should be tracked.

- 13 -

I heard from the first officer about this rotten fruit and how that, in his patrol officer experience, means that they're trying to cover up an odor.

After that I had the special operations unit and K-9 handler in here and an expert witness in drug interdiction, neither one of which provided me any testimony that suggests that rotten fruit is commonly used to mask an odor.

I find it very hard to believe that a person is going to carry a gun to protect themselves in a drug deal and carry it in a sealed container in the back of a pickup truck.

The bottom line is, I've got money and I've got an odor. I don't believe that's enough in this particular circumstance. I'm going to grant the motion for a direct finding. I'm going to deny the complaint for forfeiture."

¶ 25 Both the State and claimant suggest we should review the trial court's ruling *de novo*. They contend the court granted claimant's motion for a directed finding at the first stage of the procedure outlined above. The State alternatively argues that the court still erred, even if we were to find it had proceeded to the second stage as the court's decision was against the manifest weight of the evidence.

¶ 26 We disagree with the parties that the trial court granted claimant's motion at the first stage of the directed-finding procedure and instead find that the court had in fact proceeded to the second stage and actually weighed the evidence. For instance, the court's statements show that it gave little weight to Deputy Breitbach's testimony concerning the presence of rotten fruit to mask the odor of cannabis because neither Deputy Shippert nor Sergeant Moore similarly testified that rotten fruit was commonly used by drug traffickers to conceal the odor of cannabis. Likewise, the court's comments suggest it gave little weight to the fact that claimant had a firearm in his

vehicle, finding "it very hard to believe that a person is going to carry a gun to protect themselves in a drug deal and carry it in a sealed container in the back of a pickup truck." The court further stated it was disregarding Deputy Shippert's testimony about the claimant's vehicle being tracked due to a lack of supporting evidence. Thus, because we find the court proceeded to the second stage and actually weighed the evidence, we will review its decision using the manifest-weight standard. "A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the judgment is arbitrary, unreasonable, or not based on the evidence." *Id.* ¶ 56.

¶ 27 We find the trial court erred in granting claimant's motion for a directed finding. It is apparent from our review of the record that the State presented sufficient circumstantial evidence to "show by a preponderance of the evidence that the property [was] subject to forfeiture." 725 ILCS 150/9(G-5) (West 2022). The State presented evidence that claimant was transporting a large amount of currency—approximately $33,000—in his vehicle. While the currency alone was insufficient to prove the State's case, it was nonetheless highly probative of illegal drug activity. See, *e.g.*, *United States v. Currency*, *U.S. $42,500.00*, 283 F.3d 977, 981 (9th Cir. 2002) ("[P]ossession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs." (Internal quotation marks omitted.)). In addition to the amount of currency, the manner of its packaging in a vacuum-sealed bag, wrapped in foil and rubber banded, was also highly probative of drug trafficking. See, *e.g.*, *United States v. $144,780.00 in United States Currency*, 792 F. App'x 573, 580 (10th Cir. 2019) (finding that the presence of a substantial amount of vacuum-sealed currency weighed strongly in favor of forfeiture); *United States v. $117,920.00 in United States Currency*, 413 F.3d 826, 829 (8th Cir. 2005) (finding that currency "bundled in rubber bands, enclosed within a plastic sack, and hidden

beneath clothing in a duffle bag" was evidence of a substantial connection between the currency and drug trafficking); *$242,484.00*, 389 F.3d at 1161 ("A common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack" "because there are better, safer means of transporting cash if one is not trying to hide it from the authorities."). Moreover, the "very strong" and "overwhelming" odor of raw cannabis emanating from claimant's vehicle and the contents therein, including the currency itself, constituted additional probative evidence of drug trafficking. See, *e.g.*, *United States v. $252,300.00 in United States Currency*, 484 F.3d 1271, 1275 (10th Cir. 2007) ("[T]he smell of marijuana on the currency is strongly probative of a link between the money and drug trafficking."); *$117,920.00 in United States Currency*, 413 F.3d at 829 (relying in part on odor of marijuana emanating from four bags, one containing currency, to affirm forfeiture). The fact that, prior to the search, claimant denied having a large amount of currency in his vehicle provided further proof of a substantial connection between the currency and drug activity. See *$63,530.00 in United States Currency*, 781 F.3d at 955-56 (stating the claimant's dishonest answer to an officer's question about possessing large amounts of currency was probative evidence of a substantial connection between the currency and drug activity).

¶ 28        In our view, the evidence presented was sufficient to overcome claimant's motion for a directed finding. The discovery of $33,000 in currency contained in a vacuum-sealed bag, rubber banded and wrapped in foil, smelling strongly of raw cannabis, together with claimant's initial denial of its presence, is strong circumstantial evidence of a relationship between the currency and "some illegal drug transaction." *$242,484.00*, 389 F.3d at 1160. We find the trial court's contrary finding was against the manifest weight of the evidence.

¶ 29 Having found that the trial court erred in granting claimant's motion for a directed finding, on remand, we direct the trial court to proceed to the second step of the forfeiture trial, *i.e.*, where "claimant shall have the burden of production to set forth evidence that the currency or its equivalent is not related to the alleged factual basis of the forfeiture." 725 ILCS 150/9(G-5) (West 2022).

¶ 30                                          III. CONCLUSION

¶ 31 For the reasons stated, we reverse the trial court's judgment and remand with directions.

¶ 32 Reversed and remanded.

¶ 33 JUSTICE DOHERTY, dissenting:

¶ 34 I agree with the majority that claimant's motion for directed finding, pursuant to section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2022)), was decided at the second stage because the trial court made credibility determinations. At this stage, "[a]fter weighing all the evidence *and applying the standard of proof required for the underlying cause*, the court must determine whether sufficient evidence remains to establish the plaintiff's *prima facie* case." (Emphasis added.) *Coffman*, 2023 IL 128867, ¶ 54. At the second stage, "the trial court views the case 'in the same manner as it would [have] had the defendant rested at the close of the plaintiff's case.' " *In re Estate of Etherton*, 284 Ill. App. 3d 64, 68 (1996) (quoting *Kokinis*, 81 Ill. 2d at 158 (Ryan, J., specially concurring)). Here, we employ a deferential standard of review and reverse the trial court only if its findings at the second stage are against the manifest weight of the evidence. *Coffman*, 2023 IL 128867, ¶ 56. A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly evident or if the finding itself is

unreasonable, arbitrary, or not based on the evidence presented. *People v. Peterson*, 2017 IL 120331, ¶ 39, 106 N.E.3d 944, 960.

¶ 35         As I discuss more fully below, the record here permits multiple inferences from the evidence presented. If a trial court had resolved those inferences in favor of the State, the record might well compel affirmance. By the same token, however, the court here resolved the inferences against the State and concluded that it had not proven forfeitability by a preponderance of the evidence, and its findings are entitled to the same deference. I would affirm the court's order granting the motion for a directed finding.

¶ 36         Analysis of this case begins with the object of the forfeiture: the seized currency. The road the State must travel to prove forfeitability of a large amount of currency seems far too short if "possession of large amounts of currency provides strong evidence of a connection between the currency and drug activity." The State's case for forfeitability of currency cannot both begin and end with its possession. Standing alone, the possession of currency is not evidence of drug activity at all, much less strong evidence of it; there must be additional evidence to help make that connection. For much the same reason, the manner in which an innocent party might carry a large amount of currency—such as being rubber-banded, or in larger denominations—hardly seems indicative of anything beyond the way one might carry a large amount of currency for any purpose, legal or illegal. We must be mindful of the temptation to indulge backward-looking reasoning based on factors that are not specific to criminal activity. A drug dealer might keep his currency stored in a backpack, but so might a person carrying currency for lawful reasons; neither would likely spread it loosely without a container. Banal facts about the *manner* in which a large amount of currency is carried tell us nothing about the legality of its purpose.

¶ 37 That being said, there are aspects about the way in which the currency at issue here was transported that rightly give rise to suspicion. Even if a person were to transport a large amount of currency, what reason would there be to place the currency in vacuum sealed, foil-wrapped packages? This rightfully raises suspicion that the currency has some connection to illegal conduct, but what conduct? Where the State bears the burden of proving forfeitability by a preponderance of the evidence, it is not sufficient to raise a suspicion of a connection to some unspecified illegality. Recall that even before the 2018 amendments to the statutory provisions on forfeiture, it was necessary to show "some nexus" between forfeited currency and the illegal activity. *$1,124,905 U.S. Currency*, 177 Ill. 2d at 338-39 (rejecting a requirement that a "substantial connection" exist).

¶ 38 The State's complaint for forfeiture tells us what illegal activity it alleges the currency was connected to: that it "was used or intended to be used to commit a felony violation of the Illinois Cannabis Control Act, or was furnished or intended to be furnished in exchange for cannabis, or is a proceed traceable to such an exchange in violation of the Illinois Cannabis Control Act." It is on this point that the trial court found the evidence lacking. There was no cannabis found in the vehicle, nor was there direct evidence that the claimant ever possessed it. The State's key evidence was the "overpowering" smell of raw cannabis, which is competent circumstantial evidence of that there had been raw cannabis in claimant's possession. It would certainly make sense that a party who recently transported cannabis and sold it would be left with (a) the odor of the transported cannabis in his vehicle and (b) the cash earned from a sale. The question is whether the trial court's finding that this evidence was insufficient to meet the State's burden of proving the required nexus between the currency and cannabis by a preponderance of the evidence was unreasonable or arbitrary or whether an opposite conclusion is *clearly evident*.

¶ 39    To be sure, there was other evidence presented, but the trial court found it unpersuasive. According to Deputy Breitbach's testimony, authorities who did not testify had flagged claimant's car as being "involved in some nature of trafficking." While this hearsay evidence was admissible (725 ILCS 150/9(B) (West 2022)), it was up to the trial court to decide what weight, if any, to give it. Deputy Shippert testified that he received information from other agencies that claimant's driving route—from California, through Las Vegas and Colorado—was "unusual." On the police video, claimant clarified that his starting point for his trip home was Fresno, California, and it is undisputed that he lived in Milwaukee, Wisconsin. One need only plug those locations into a computer service suggesting driving directions (see, *e.g.*, http://www.google.com/maps) to find that a direct route from Fresno to Milwaukee might well pass through Nevada, Utah, and Colorado. Deputy Breitbach testified that rotting fruit, such as found in the claimant's car, is sometimes used as a "concealing agent to mask the odor of cannabis." His testimony was based on unspecified training and experience, but the trial court seemed concerned that this testimony had come from a sheriff's deputy and not from the State's expert in drug interdiction, Sergeant Moore.

¶ 40    It is clear from the record that the trial court paid close attention to the testimony. For example, when Deputy Shippert testified that claimant initially denied having "currency" in the vehicle, the court asked him to clarify whether he had used the word "currency" when speaking to claimant, and not "money." The police video of that conversation shows that, after the currency was located, claimant was confronted with his prior statement that there was no "currency," and he indicated a lack of understanding of that word. Shippert himself testified that it was "difficult to understand" claimant, who utilized the services of an interpreter at the forfeiture hearing.

¶ 41 The majority has capably explained that the legislature enacted important reforms to Illinois's forfeiture procedure in 2018, including citation to the floor remarks of the legislative sponsor of that reform. I find it useful to recount a portion of those remarks here:

> "So, our Bill contains a vast number of reforms. The most central of which is that the burden of proof now falls on the state. So this … when the state takes your stuff, they have to say we can prove that it was involved in the commission of a crime, rather than you the property owner having to prove that your stuff was not involved in the commission of a crime. We believe this restores the fundamental principle in our justice system of innocent until proven guilty." 100th Ill. Gen. Assem., House Proceedings, June 23, 2017, at 5-6 (statements of Representative Guzzardi).

¶ 42 It is clear to me that the trial court in this case gave real life to the legislature's intended reform because it held the State to meeting burden of proving forfeitability by a preponderance of the evidence. I do not find that its decision was against the manifest weight of the evidence, so I would affirm.

*People v. $33,260 United States Currency*, **2024 IL App (4th) 231465**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Ogle County, No. 23-MX-3; the Hon. John C. Redington, Judge, presiding. |
| **Attorneys for Appellant:** | Michael C. Rock, State's Attorney, of Oregon (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | Donald P. Sullivan, of Rockford, for appellee. |